UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR LEE SMITH,

                                CASE NO. 15-13149

           *Plaintiff*,               DISTRICT JUDGE THOMAS L. LUDINGTON

*v.*                                MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

           *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 12)

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Smith is not disabled. Accordingly, **IT IS RECOMMENDED** that Smith's Motion for Summary Judgment (Doc. 11) be **DENIED**, that the Commissioner's Motion for Summary Judgment (Doc. 12) be **GRANTED**, and that this case be **AFFIRMED**.

## II.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI, 42

U.S.C. § 1381 *et seq*. (Doc. 2; Tr. 1-3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12).

Plaintiff Arthur Smith was thirty-four years old as of April 14, 2014, the date of the ALJ's decision. (Tr. 25, 136). His application for benefits was initially denied on January 2, 2013. (Tr. 78-81). Smith requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Kim Soo Nagle on January 14, 2014. (Tr. 29-67). Smith, represented by attorney William Watkinson, Jr., testified, as did vocational expert ("VE") Suman Srinivasan. (*Id*.). On April 14, 2014, the ALJ issued a written decision in which she found Smith not disabled. (Tr. 11-25). On August 16, 2015, the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, after review of additional exhibits,[1] (Tr. at 406-30), the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Smith filed for judicial review of that final decision on September 3, 2015. (Doc. 1).

## B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the

---

[1] In the Sixth Circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

3

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.

4

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22 (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Smith not disabled under the Act. (Tr. 25). The ALJ found at Step One that Smith had not engaged in substantial gainful activity following the alleged onset date, September 24, 2012. (Tr. 16). At Step Two, the ALJ concluded that Smith had the following severe impairments: "obesity (morbid), degenerative disc disease of the cervical and lumbar spines." (Tr. 17-18). At Step Three, the ALJ found that Smith's combination of impairments did not meet or equal one of the listed impairments. (Tr. 18-19). The ALJ then found that Smith had

5

the residual functional capacity ("RFC") to perform light work, except with nonexertional

limitations as follows:

> [C]laimant requires the ability to sit and stand alternately, at will while at
> his workstation. He can perform no more than occasional climbing of
> ramps and stairs, balancing, stooping, kneeling, crouching and crawling. He
> can never climb ladders, ropes or scaffolds. The claimant is unable to
> perform repetitive rotation, flexion or extension of his neck. He can tolerate
> no more than frequent exposure to unprotected heights and dangerous
> moving machinery.

(Tr. 19-23). At Step Four, the ALJ found that Smith could not return to any past relevant

work. (Tr. 23). At Step Five, the ALJ concluded that Smith retained the ability to perform

work which exists in significant numbers in the national economy. (Tr. 23-25).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has thoroughly reviewed Smith's medical record. In lieu of

summarizing his medical history here, the Court will make references and provide

citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### a.    Smith's Function Report

Smith completed a function report on November 19, 2012, in which he asserted

that he suffered from back and neck pain resulting from a car accident. (Tr. 165). Smith

reported that his daily activities were limited to taking pain medication, undergoing

therapy, and sleeping. (Tr. 166). Smith wrote that he did not assist in taking care of any

persons or pets. (*Id*.). Smith experienced pain when lifting his arms up, putting his arms

behind himself, bending over to put on pants or shoes, using a tub, and washing his hair. (*Id.*). Smith did not prepare his own meals, in part because bending his head downward caused pain. (Tr. 167). He did not perform chores due to difficulty bending. (*Id.*).

Smith wrote that he did not leave home except to visit his doctor due to pain "running all down [his] back and neck [and] lower back." (Tr. 168). As to transportation, he made use of public transit and rode in cars. (*Id.*). He shopped in stores for food, clothing, and shoes, with those trips taking "a while." (*Id.*). Smith reported that his hobby was "working on cars and making money," but that he could no longer perform those activities due to his ailments. (Tr. 169). He wrote that he did not spend time with others, and that he only traveled out of the home to attend therapy and doctor's appointments. (*Id.*). Smith reported difficulty getting along with others and problems handling stress, but otherwise reported having no mental difficulties. (Tr. 169-171).

He reported difficulty with all postural and exertional activities, including lifting, bending, kneeling, walking, and climbing. (Tr. 170). He could walk for "about 5 minutes," and could resume walking after a five minute break. (*Id.*). He reported not using a cane or other assistive device. (Tr. 171). Smith wrote that he took Lortab and Vicodin for pain management. (Tr. 172). .

### b.    Smith's Testimony at the Administrative Hearing

At the January 14, 2014, hearing before the ALJ, Smith testified that he began living with his mother and cousin following his car accident in August 2012. (Tr. 37). He stated that these family members were both on disability, and were able to assist Smith

with putting on shoes and other daily activities. (*Id*.). Smith has two children who spend their weekends with him. (Tr. 39).

Smith asserted that he could not work because he was unable to stand or sit for more than ten minutes, experienced shooting pain in his legs, and experienced hand cramping that prevented him from "doing much with [his] hands." (Tr. 40). He spent most of the day lying down. (Tr. 41).

In his work as an automotive mechanic, Smith lifted up to fifty pounds of weight. (Tr. 41). There were substantial gaps in his income tax records, which was the result of not filing taxes. (Tr. 42). The ALJ inquired as to whether Smith performed other jobs over his work history, to which he responded that he "can't really remember, because my memory is kind of messed up, too, from the accident." (*Id*.). However, he reported performing a temporary job with a placement agency. (*Id*.).

Smith claimed that he sometimes made meals, but other times relied on his family. (Tr. 43). He alleged experiencing headaches "[e]very day mostly" since his accident, lasting from thirty minutes to an hour. (Tr. 43). Smith stated that he was not taking prescription medication because his physicians "won't prescribe it," and instead directed that he should treat with a pain specialist. (Tr. 44). He had not taken Lortab for approximately six months prior to the hearing. (*Id*.). Neither was Smith using over-the-counter pain relieving medication. (Tr. 48). He asserted that his physician, Dr. Ochs, ceased prescribing medication after Smith's medical insurance from the car accident expired. (Tr. 45). Smith alleged that he treated with Dr. Ochs five times weekly for nearly

8

a year, for receipt of massages and pain reliving injections. (Tr. 46). Smith averred that he was using marijuana for pain relief, but also acknowledged that it "doesn't really help." (Tr. 48). He then clarified that the use of marijuana helped to "take [his] mind off of the pain," but nevertheless he spent most days in bed. (*Id.*).

Smith alleged that he could not lift weights over ten pounds, and could not play with his children or pick them up. (Tr. 49-50). He reported shopping in stores only when physically able to do so. (Tr. 50). He listened to his radio and iPod, watched some television, and used Facebook twice daily. (Tr. 51). Smith was unable to partake in billiards or bowling. (*Id.*).

Smith alleged that he experienced substantial back pain, which was constant and was relieved only by lying down. (Tr. 53). He also experienced neck pain, usually in three daily bursts of thirty minutes each. (Tr. 54). Smith experienced difficulty standing for more than ten minutes, could walk for about five minutes, and found it necessary to "move around" due shooting leg pain. (Tr. 54-55). Smith asserted that he used a cane, which was prescribed for occasional use, but which he found necessary to use "daily," "all the time." (Tr. 55). Use of the cane permitted Smith to walk for about ten minutes. (Tr. 57). Smith also testified to experiencing some numbness in his left arm every day for about thirty minutes at a time. (Tr. 57-58). He also asserted that he experienced shooting pain down the left arm when turning his head left. (Tr. 59-60). Smith claimed that he was totally unable to bend or turn at the waist. (Tr. 60). Likewise, he was unable to crouch, crawl, or climb. (*Id.*).

9

### c.       The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Smith's ability to perform work. (Tr. 62). The VE found that Smith's past relevant work as a car mechanic was performed at the medium level of exertion. (*Id.*). The ALJ asked the VE to assume a hypothetical individual with Smith's age, education, and work experience, and who could perform work at the light level of exertion, with limitation to never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; who is precluded from performing repetitive neck movement; and who can tolerate no more than frequent exposure to dangerous machinery and unprotected heights. (Tr. 63). The VE found that such a worker could not perform Smith's past relevant work as a car mechanic. (*Id.*). However, the VE found that such a worker could perform work available in the national economy, including mail clerk (75,000 jobs nationally), parking lot attendant (70,000 jobs), and marking clerk (220,000 jobs). (Tr. 64).

The ALJ then posed a second hypothetical, wherein the worker would be limited as in the first hypothetical, but with an additional limitation to sitting or standing at will, provided that the worker was not off task more than ten percent of the time. (Tr. 64). The VE found that this limitation would not affect the worker's ability to perform the jobs identified in response to the first hypothetical. (Tr. 65).

10

1:15-cv-13149-TLL-PTM   Doc # 14   Filed 06/13/16   Pg 11 of 23   Pg ID 522

In a third hypothetical, the ALJ added a limitation to occasional use of the neck; the VE again found that this limitation would not affect the number of jobs identified. (Tr. 65).

In a fourth hypothetical, the ALJ added the use of a cane with the non-dominant hand; the VE found that this restriction would likewise have no impact on the jobs identified. (Tr. 65).

In a fifth hypothetical, the ALJ added a further limitation that the worker would be off task more than twenty percent of the day; as expected, this restriction precluded all work. (Tr. 65).

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both    "acceptable"    and    non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and

11

physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore,

12

the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations

13

regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the

14

severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)  [D]aily activities;
(ii)  The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)  Treatment, other than medication, . . . received for relief of . . . pain;
(vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human*

15

*Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

###### G.   Analysis

Smith argues that the ALJ erred by improperly giving little weight to the opinion of Dr. Richard Ochs, and by failing to address nerve conduction studies. (Doc. 11 at 9-14).

Smith argues that the ALJ erred by giving insufficient deference to the opinion of Dr. Richard Ochs. (Doc. 11 at 9-13). As noted above, ALJs are required to provide "good reasons" for the weight assigned to opinions rendered by treating physicians. 20 C.F.R. § 404.1527(c)(2). Opinions of treating sources are due controlling weight if they are well supported and are not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). However, this deference does not extend to matters reserved to the Commissioner, including pronouncements of disability. 20 C.F.R. § 404.1527(d).

Smith argues that Dr. Ochs found him disabled "due to cervical radiculitis/neuritis and cervical and lumbar herniated discs," and that this conclusion is well supported by MRI scans of his lumbar spine showing herniated discs at L4-5 encroaching on the left neuroforamen, compression of the T11 vertebrae, a herniated disc at C3-4, and straightening of the lordotic curve, apparently caused by muscle spasms. (*Id*. at 11-12). Smith alleges that the ALJ neglected to discuss these MRI studies in any way. (*Id*. at 12).

As the Commissioner aptly notes, the ALJ in actuality did reference Smith's MRI studies in her decision. (Doc. 12 at 11). The ALJ specifically stated that "the medical

16

record stated the claimant had a disc herniation at C3-4" but did not demonstrate "encroachment." (Tr. 18). Looking to the MRI studies, it was found in September 2012 that Smith suffered from a herniated disc at C3-C4, straightening of the lordotic curve due to cervical sprain or strain, disc herniation at L4-L5, and compression deformity of the T11 vertebral body. (Tr. 402-405). A second study in August 2014 showed disc herniation at C3-C4 and straightening of the lordotic curve due to cervical sprain or strain. (Tr. 430). Of course these studies do not, by themselves, establish that Smith experienced any limitations resulting from his spinal maladies. They may, however, provide an objective basis for Dr. Ochs' medical opinions concerning Smith's limitations.

In September 2012 Dr. Ochs completed an orthopedic consultation, concluding that Smith suffered from cervical radiculitis/neuritis, sprain/strain in the cervical region, trigger point of the left trapezius, sprain/strain of the lumbar region, and headaches. (Tr. 197). He found that Smith's prognosis was "guarded," but did not assess any specific functional limitations. (*Id.*).

In June 2013 Dr. Ochs noted that Smith had continuing lumbar pain, and prescribed the pain reliever Lortab. (Tr. 370). The word "disability" is circled, but there is no indication as to Smith's functional limitations. (*Id.*). Likewise, in July 2013, Dr. Ochs drafted a check-the-box disability certificate, in which he noted that Smith was "totally disabled" from "9-22-12 to permanently." (Tr. 233, 369). Dr. Ochs likewise issued disability certificates in August 2012, September 2012, October 2012, January 2013, February 2013, March 2013, April 2013, May 2015 which contained no detail about

17

Smith's functional limitations. (Tr. 372, 379-84, 389-91). Determining whether a claimant is disabled is reserved to the Commissioner, thus these medical records are not an "opinion" at all, and the ALJ properly gave it no weight. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2.

In May 2013 Dr. Ochs completed an independent medical examination report, which is in actuality a review of the report prepared by another physician, Dr. Cheryl Lerchin. (Tr. 400). Dr. Lerchin concluded that Smith required no physical therapy or household assistance. (*Id*.). Dr. Ochs challenged this finding, noting that it was prepared without the aid of Smith's records or diagnostic tests, and that Smith continued to complain of pain at seven out of ten severity ranging from L4 to S1, along with a reduced range of motion "in all planes." (*Id*.). Dr. Ochs also noted that electromyogram studies showed "C4-C5 radiculopathy and S1 radiculopathy." (*Id*.). Dr. Ochs did not, however, assess Smith's functional limitations beyond noting that he was disabled. (*Id*.). The question of disability is reserved to the Commissioner, and Dr. Ochs did not provide any functional limitations to which the ALJ could accord weight. Therefore, the ALJ properly declined to accord this opinion any weight. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect *judgments about the nature and severity of your impairment(s)*, including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.") (emphasis supplied); 20 C.F.R.

18

§ 416.927(d) (providing that the Commissioner is solely "responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Dr. Ochs comes closest to providing functional limitations in an August 2012 disability certificate, wherein he noted that Smith was precluded from household work, caring for children, caring for his personal needs, and employment, and should do no bending, lifting, twisting, or prolonged standing. (Tr. 376, 378, 379). Dr. Ochs concluded that Smith would be so disabled for one year. (*Id.*). The ALJ sensibly notes, however, that Dr. Ochs does not appear to have tested Smith's lifting strength at any point throughout the treatment record, and thus failed to justify his finding that Smith could lift no weight. (Tr. 21). In addition, Smith's own testimony reveals that he is not completely disabled from performing at least some of the tasks, i.e., sometimes made meals (Tr. 43), could lift weights up to ten pounds (Tr. 49-50), and could shop in stores at times (Tr. 50). The ALJ did not err by according little weight to this opinion. (Tr. 22).

Smith also argues that the ALJ failed to discuss Dr. Ochs' December 2012 evaluation of a nerve study, which demonstrated radiculopathy at C4-C6 and S1, along with polyneuropathy. (Doc. 11 at 12; Tr. 392). Review of the ALJ's decision demonstrates that she did, in fact, consider this report, noting that it revealed "cervical and lumbar radiculopathy," but discounted those findings because "the claimant never followed up with a pain specialist and currently takes no narcotic pain medications" and "does not even use over the counter Ibuprofen or Tylenol to treat this allegedly disabling pain." (Tr. 21). This feeds into the ALJ's overall conclusion that Smith's allegations of

19

disabling pain are not credible. (Tr. 20). Contrary to Dr. Ochs' finding that Smith suffered from seven out of ten pain (Tr. 400), and despite Smith's averment that he spent his days confined to bed because of disabling pain (Tr. 48), Smith testified at the hearing that he took no medication for the treatment of pain (Tr. 44, 48). Considering all of Plaintiff's impairments, the modest treatment Plaintiff received also supports the ALJ's findings since such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Smith's lack of treatment for his allegedly disabling pain comports much more readily with the findings of Drs. Bina Shaw and David Wash. Dr. Shaw, a consultative examiner, drafted an analysis of Smith's condition in December 2012, just a few months after his car accident. (Tr. 226). She found that Smith's "neck and shoulder pain have almost completely resolved with the help of physical therapy," that Smith's pain did not radiate into the legs or thighs, that Smith's range of motion was full in the spine, that he did not have tenderness along the spine, that his gait was normal, and that he did not require the use of his cane. (Tr. 226-27). Dr. Shaw concluded that Smith had the ability to lift "at least 15-20 pounds of weight without difficulty eight hours a day," and that he had full strength in all extremities. (Tr. 227-28). The ALJ gave great weight to Dr. Shah's opinion, noting its consistency with the other evidence of record. (Tr. 23).

The ALJ did not mention Dr. Wash's opinion because that was first presented to the Appeals Council but I note that Dr. Wash also found in his September 2013 study that

20

Smith experienced no tenderness about the spine or in any extremity, had full range of motion in all joints, and that Smith's paraspinal muscles were normal in strength and tone. (Tr. 418).

While it cannot be doubted that Smith suffered some damage to his spine as the result of his August 2012 car accident, the evidence simply does not support the severe degree of limitation alleged in his testimony and Dr. Ochs' records. On the contrary, it seems that Smith ambulates quite ably without the use of the cane prescribed by Dr. Ochs (Tr. 226-27), that Smith did not experience severe long term spinal pain (Tr. 226-28, 418-19), and that his pain was so well resolved by the date of the January 2014 hearing before the ALJ that Smith found it unnecessary to take any pain medication whatsoever (Tr. 44, 48). Therefore, I suggest that the ALJ found "good reasons" for giving Dr. Ochs' opinion less than controlling weight and that she properly evaluated the nerve conduction study results.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Smith's Motion for Summary Judgment (Doc. 11) be **DENIED**, the Commissioner's Motion (Doc. 12) be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A

party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 13, 2016
S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## **<u>CERTIFICATION</u>**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: June 13, 2016                          By <u>s/Kristen Krawczyk</u>
                                             Case Manager